UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                             Plaintiff

v.                                              Criminal Action No. 3:22-cr-84-RGJ

BRETT HANKISON                                                      Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Brett Hankison is charged with two counts of Deprivation of Rights Under Color

of Law, under 18 U.S.C. § 242. [DE 1]. The matter is set for trial. [DE 64]. Defendant and the

United States each submitted four pretrial motions and motions *in limine*. [DE 40, DE 43, DE 44,

DE 49, DE 50, DE 51, DE 52, DE 57].

Defendant moves to (1) allow jury viewing of the location(s) where the conduct at issue

took place [DE 40], (2) set an exhibit conference [DE 43], (3) compel notice of intent to offer

evidence of other crimes, wrongs, or acts [DE 44], and (4) exclude visual depictions of the

deceased and an unrelated curtain. [DE 57]. The United States moves to (1) exclude improper

references to the victims' civil lawsuits and settlements [DE 49], (2) exclude argument about

equally available witnesses [DE 50], (3) prohibit references to Defendant's state trial [DE 51], and

(4) exclude references to rifle casings found after the shooting. [DE 52]. The United States

responded to Defendant's motion for scene view, Defendant replied, and both parties submitted

additional supplemental briefing. [DE 41; DE 42; DE 66; DE 67]. Each party submitted a response

to the remaining motions. [DE 60; DE 61].

Following these filings, the Court held a final pretrial conference and heard argument on

the pending motions. [DE 64]. Based on the parties' briefing and representations at the

1

conference, the Court found that Defendant's motion to set exhibit conference [DE 43], Defendant's motion *in limine* to compel notice of intent to offer evidence of other crimes, wrongs, and acts [DE 44], and the United States' motion *in limine* to prohibit references to Defendant's state trial [DE 51] were moot.  [DE 64].  The Court also found Defendant's motion *in limine* to exclude visual depictions of the deceased and the unrelated curtain [DE 57] was moot as to the unrelated curtain only and denied the motion as to United States Exhibits 28, 21, 57, and an unnumbered exhibit depicting the positioning of the victim.  [DE 64].  The Court reserved judgment on the remaining motions for a separate order, which it issues now explaining its conclusions.  These rulings are preliminary.  The Court may return to any of them during trial and alter or amend its prior *in limine* ruling.

## I.       Defendant's motion for scene view [DE 40]

Defendant requests that the Court allow a scene view during trial.  Defendant requests a view of "the front and rear exterior of 3003 Springfield Drive Apartment 3; the front and rear exterior of 3003 Springfield Drive Apartment 4; the breezeway leading into both apartments; and the interior of both apartments," or, alternatively, only the requested exterior portions.  [DE 40 at 125].  In support of his request, Defendant asserts a scene view is the most effective way for the jury to understand the circumstances of the incident and the dimensions of the location, it will not undermine the orderliness of the trial, and the facts of the case warrant it.  [DE 40 at 125–26].  The United States responds that the Court should deny the motion because (1) establishing the appearance of the scene is easily accomplished by voluminous pictures, videos, and diagrams, (2) the jury could be misled because of key changes to the appearance of the scene, and (3) logistical challenges of a scene view could disrupt the trial and expose the jury to extra-judicial information.  [DE 41 at 137–43].

"The federal courts recognize their inherent power to permit a jury view of places or objects outside the courtroom." *United States v. Triplett*, 195 F.3d 990, 999 (8th Cir. 1999) (quoting *United States v. Passos-Paternina*, 918 F.2d 979, 986 (1st Cir. 1990) (citations omitted), *cert. denied*, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991); *see also Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 958 (5th Cir. 1979). It is well settled in the Sixth Circuit and elsewhere that the Court's decision to allow a scene view is "highly discretionary." *United States v. Moonda*, 347 F. App'x 192, 201–02 (6th Cir. 2009); *see also Nw. Nat. Cas. Co. v. Glob. Moving & Storage Co.*, 533 F.2d 320, 323 (6th Cir. 1976). In considering a motion for a scene view, the Court considers "such factors as the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997); *see also Moonda*, 347 Fed. App'x at 202 (explaining a court should consider "logistical difficulties and safety hazards").

"The Court is also mindful" that it may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Chunn*, 2022 WL 3584624, at *1 (S.D. Miss. Aug. 19, 2022) (citing FED. R. EVID. 403).

First, the facts do not warrant a viewing of the interior of either apartment. Defendant was not one of the officers who breached the door to Apartment 4 or stepped in the front entryway to fire shots. [DE 55 at 267–69; DE 45-1 at 164–65]. Moreover, the changes to the interior of the apartments would be more substantial than any changes to the exterior considering there are new tenants. [DE 41 at 140]. Additionally, the logistical challenges of visiting the interior of a private

home are greater than an exterior viewing.  As a result, the Court finds the minimal probative value

of an interior view of the apartment would be substantially outweighed by the risk of unfair

prejudice and misleading the jury.  For these reasons, the Court **DENIES** the motion, in part, as to

the interior portions of the apartments.

Turning to the exterior portions of the request, Defendant asserts that a scene view would

provide the jury with a more "comprehensive" understanding of the scene.  [DE 40 at 128].

Although the Court acknowledges that "numerous pictures, videos, and diagrams" are available

from the night of the shooting and subsequent investigation (as the United States points out), a

view of the exterior would provide valuable context to these exhibits and is unlikely to "mislead[]

the jury about important facts of the case."  [DE 41 at 137].  Even considering the volume of

images available to the parties of Apartment 3 and Apartment 4 as they appeared an in-person

viewing of the building would create a deeper understanding of the dimensions, distances, and

layout of the scene.  *See Reid v. United States*, 276 F. 253, 259 (6th Cir. 1921) ("[T]he purpose of

[a scene view] was to enable a clear idea to be had of the testimony that the government might

offer . . . not to gain evidence, but simply to give [jurors] the means of better understanding the

evidence[.]") (quotations omitted).  The United States concedes that "perhaps *the* key issue at trial"

will be what Defendant could see from where he stood outside the window and sliding glass door

that he fired through. [DE 41 at 133 (emphasis in original)].  More context for the details presented

in evidence will enhance the jury's understanding of what took place.

While the United States is correct that there will inevitably be some changes to the scene—

a scene view would occur during the day instead of at night, the vehicles parked in the parking lot

would be different, and the window coverings may have changed, [DE 41 at 140], —these changes

are not significant enough to outweigh the considerable utility of a scene view, especially for

determining distance.  *See Glob. Moving & Storage Co.*, 533 F.2d at 323 (upholding trial court's viewing of a warehouse during a civil bench trial where the condition had been "altered after the fire" but substantial testimony "detailed the condition of the warehouse at the time of the fire").

The United States argues that "[e]ven if the jury were told to disregard the window coverings, the risk that jurors would subconsciously be influenced remains high." [DE 41 at 141]. The Court disagrees.  The differences in appearance here are not difficult to visualize and comprehend, especially where the United States has voluminous exhibits to illustrate the scene as it existed at the time, as it says it does.  Unlike the more substantial differences when courts have denied scene visits—such as traffic conditions on a public highway, *Moonda*, 347 F. App'x at 201–02, or heavy rain changing the condition of a field, *United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir. 1987), —jurors would not be misled by the straightforward differences here.  A juror can understand the obvious difference in appearance between day and night; between the window and glass door coverings during a scene view and in photographic evidence; and between the parking lot during a scene view and in photographic evidence.  In contrast, the jury would be aided by viewing the aspects of the scene that are the same, such as the size and dimensions of the building, the distances between the front door, the sliding glass door, the bedroom windows, and the parking lot, and the general layout of the space.  The benefit of seeing these unchanged details in person outweighs any differences that a juror would expect and understand three years after the incident.  Even if these differences were to cause confusion, a jury instruction may remedy that issue.

The logistical challenges are also not so great that the United States Marshals Service ("USMS") cannot facilitate the scene view.  As Defendant argues, a scene view was successfully conducted during Defendant's state trial and proceeded without incident during a time when far

more public attention focused on this incident.  [DE 42 at 147].  Additionally, the scene view

would not take much time considering that the scene consists of only the exterior portions of a

single building and is located less than a thirty-minute drive from the federal courthouse.  In any

event, the challenge of securing the scene—a private residence away from heavily trafficked public

roadways—would not be as difficult as in many cases in which courts denied scene views, such as

a public grocery store or a busy highway.  [*See* DE 41 at 142 (citing *Kelly v. Wegman's Food

Markets, Inc.*, 98 F. App'x 102, 105 (3d Cir. 2004)), 139 (citing *Moonda*, 347 F. App'x at 201–

02)].  The Court finds that USMS can adequately control the scene for a brief scene view and

minimize the possibility of the jury being exposed to prejudicial information.  At the very least,

the Court finds that the benefit to the jury of a scene view outweighs the minimal logistical risks.

As a result, the Court **GRANTS** Defendant's Motion for Scene View for limited exterior

portions of the scene.  Accordingly, the Court has considered the parties' input on the logistics of

the scene view.  [DE 66; DE 67].  The Court intends to minimize discussion during the scene view

and follow a rigid structure, like the one in *Reid*:

> The jury was told in open court . . . that the purpose of the view was to enable a clear idea
> to be had of the testimony that the government might offer as to what sort of a place it was;
> that the purpose was not to gain evidence, but simply to give you the means of better
> understanding the evidence; that counsel for the defendants as well as the defendants
> themselves were at liberty to be present; that there was to be no discussion of any kind
> concerning the case in any way, or the kind of place you see; that talk in the hearing of the
> jury shall be nothing more than that which is briefly necessary to identify the place. There
> will be no discussion of the merits of the case.

276 F. at 259 (quotations omitted).  During the scene view, jurors will be transported by USMS.

Upon arrival, and after USMS has secured the scene, jurors will be permitted to physically

approach the breezeway leading to Apartment 3 and Apartment 4 as well as the side door and

bedroom windows of Apartment 4 facing the parking lot.  Jurors may also walk around the side of

the building to judge the distance to the rear of Apartment 3.  Defendant, counsel for Defendant,

counsel for the United States, and the victims will be permitted to attend but will not be allowed

to approach the scene.  Instead, they must remain in or within the immediate vicinity of their

vehicle.  Discussion of any kind, apart from instructions issued by the Court or USMS, will be

strictly prohibited.

Finally, the Court will provide jury instructions for the scene view.  The Court **ORDERS**

that the parties submit proposed jury instructions for the scene visit by October 30, 2023.

## II.    Defendant's motion *in limine* to exclude visual depictions of the deceased and the unrelated curtain [DE 57]

Defendant moved to exclude visual depictions of the deceased and references to an

unrelated curtain.  Defendant moved to exclude a curtain that covered Breonna Taylor's ("Taylor")

bedroom window, which Defendant did not fire through during the incident.  [DE 57 at 313].  In

its response, the United States stated that it does not have the curtain and does not intend to

introduce the curtain into evidence.  [DE 61 at 356].  At the final pretrial conference, the parties

agreed, and the Court ruled that the issue of the unrelated curtain—the one covering Breonna

Taylor's bedroom—was moot.  [DE 64].

Turning to the visual depictions of Taylor, "[e]xclusion under Rule 403 is appropriate only

where the probative value of evidence is *substantially outweighed* by unfair prejudice[.]'"  [DE 61

at 360 (citing FED. R. EVID. 403)].  Just because an image contains a depiction of Taylor—one of

the victims—does not by itself make its probative value substantially outweighed by unfair

prejudice, nor does it necessarily mean there is any *unfair* prejudice.  *See United States v. Boyd*,

640 F.3d 657, 667–68 (6th Cir. 2011) ("Evidence is not unfairly prejudicial simply because it is

gruesome or disturbing."); *United States v. Brady*, 595 F.2d 359, 361–62 (6th Cir. 1979) (admitting

gruesome pictures because of "highly probative" nature).  The images of Taylor generally in the

apartment, Exhibits 28, 21, 57 and the unnumbered exhibit demonstrating the victims' positioning

in the hallway, carry probative weight for the United States' case, especially as it relates to showing

a Fourth Amendment seizure occurred. [DE 61 at 361 (citing *Thompson v. City of Lebanon*, 831

F.3d 366, 371 (6th Cir. 2016))]. However, images of Taylor may at some point cross a threshold—

depending on the nature of the depiction and the context in which they are used—where unfair

prejudice does substantially outweigh their probative value under Rule 403. For example, images

that would show a close-up view of Taylor emphasizing only graphic details provide little

relevancy to proving the charges at hand and would be subject to exclusion under Rule 403.

Because the Court has not seen the videos or other images that the United States intends to

introduce, it cannot make a ruling as to whether each exhibit involving a visual depiction of Taylor

would be admissible. The Court will admit exhibits similar to the four displayed at the final pretrial

conference because they showed aspects of the crime scene material to the charges against

Defendant, but reserves judgment on additional photographs of this nature for a case-by-case

determination at trial.

### III.   United States' motion *in limine* to exclude improper references to the victims' civil lawsuits and settlements [DE 49]

The United States moved to exclude references to civil lawsuits filed by Breonna Taylor's

mother, Taylor's then-boyfriend, K.W., and Taylor's neighbors C.N. and C.E. [DE 49 at 191].

The United States asserts that no references of any kind should be made to Taylor's mother's suit

and references to the civil lawsuits filed by the other victims—K.W., C.N., and C.E.—should be

limited to establishing bias and only permitted after they testify. [*Id.* at 191–92]. The United

States stresses that Defendant improperly used such a reference to encourage jury nullification in

closing argument at his state trial. [*Id.* at 192].

Defendant did not respond to this motion in writing, but at the final pretrial conference,

Defense counsel stated that he had "no intention of violating any rules" regarding improper

references to the civil lawsuits.  The United States reiterated its concern that Defendant would use the civil lawsuits to encourage jury nullification and restated its request to limit reference to any civil lawsuits for purposes other than challenging a witness' credibility.  Defendant and the United States agreed on this understanding.

Civil lawsuits are relevant only to witness credibility.  FED. R. EVID. 402.  References to any civil lawsuits will be permitted only for the purposes of challenging the credibility of witnesses, and only if they testify.  *See United States v. Lewis*, No. 13-20122, 2015 WL 4771328, at *3 (E.D. Mich. Aug. 13, 2015) (explaining new evidence of a "civil trial" would have been only "impeaching evidence since it goes to the credibility" of the witness);  *United States v. Shaw*, No. 22-CR-00105-BLF-1, 2023 WL 3569992, at *2 (N.D. Cal. May 19, 2023) (granting motion *in limine* to "exclude evidence of related civil lawsuits except to impeach a testifying witness").  The Court will prohibit their use for any type of jury nullification argument.  *See United States v. Walsh*, 654 F. App'x 689, 697 (6th Cir. 2016) (affirming district court's grant of motion *in limine* to preclude evidence and arguments that would encourage jury nullification).  The United States' motion is **GRANTED**.

### IV.   United States' motion *in limine* to exclude argument about equally available witnesses [DE 50]

The United States moved to prohibit argument about equally available witnesses, arguing that "it is well-established that a factfinder may not draw inferences from a party's failure to call a witness who is equally available to be called by either side." [DE 50 at 200].  The United States asserts that every potential witness, except for FBI employees, is equally available to Defendant. [*Id.*].  The United States argues that in such circumstances, "no inference should be drawn." [DE 50 at 201 (quoting *Bellmore v. U.S. Steel Corp.*, 1992 WL 376952, at *1 (6th Cir. 1992))].  Defendant did not respond to this motion in writing.  But at the final pretrial conference, Defendant

generally agreed with this premise.   Defendant did seek to clarify that if the United States referenced a witness who they did not call to testify, then the United States would "open that door" to such an inference.

In the Sixth Circuit, a factfinder may draw an adverse inference from an uncalled witness "only when a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction." *Bellmore*, 1992 WL 3769562, at *1 (quotations and citations omitted). Under that standard, "a party must show either that the missing witness is physically available only to his adversary or that the relationship between the witness and the opponent effectively renders the testimony unavailable." *Id.* Defendant may make a more general "lack of evidence" argument if he believes that testifying witnesses have not produced enough to support the United States' case without commenting on "failure to call" an equally available witness. *United States v. Henry*, 206 F. App'x 452, 458 (6th Cir. 2006); *see also United States v. Sutherland*, No. 11-20129, 2015 WL 225501, at *6 (E.D. Mich. Jan. 16, 2015) (Government was "unlikely to object" if arguments "stayed closer to the more generic, 'lack of evidence' type of argument, but . . . if Defendants argument ventured too close to . . . failure to call a particular witness," this would draw objection and a "clarification to the jury from the bench."). But Defendant may not argue that an inference should be drawn from the United States' failure to call a witness unless Defendant can satisfy the Sixth Circuit standard and establish that a witness is not equally available.   The United States' motion is **GRANTED**.

V.    **United States' motion *in limine* to exclude references to rifle casings found after the shooting [DE 52]**

The United States moves to exclude "any testimony, evidence, or argument about two stray shell casings" because they would "distract the jury with irrelevant and prejudicial information."

[DE 52 at 212].  Defendant responds that the Court should deny the motion because the shell

casings are "relevant," "exculpatory," and "not prejudicial."  [DE 60 at 334].

The two shell casings were .223 Remington—a type of ammunition commonly fired by

rifles.  [DE 60 at 334; DE 52 at 212–13].  The first shell casing was discovered by Aaron Sarpee,

who was visiting Apartment 8 at 3003 Springfield Drive on March 13, 2020, when he claims to

have found it outside Apartment 4 near the parking lot the morning after the shooting.  [DE 60 at

334; DE 62 at 368].  Sarpee turned over the shell casing to law enforcement on June 26, 2020.

[DE 60 at 335].  The Office of the Kentucky Attorney General then turned it over to the FBI.  [*Id.*].

The second shell casing was found by Juniyah Palmer ("Palmer"), Taylor's sister, "behind a plastic

storage cabinet" in her bedroom when she was moving out of Apartment 4.  [*Id.*].  Palmer gave it

to her mother, who gave it to attorney Sam Aguiar, who then gave it to the FBI.  [*Id.*].

After ballistics testing, the FBI concluded both shell casings were "discharged from the

same weapon."  [*Id.*].  That said, while these two .223 casings were found in or near Apartment 4

after the incident, the Louisville Metro Police Department's Public Integrity Unit ("PIU") did not

find any bullets or weapons matching the two .223 shell casings when it searched the scene.  [DE

52 at 212, 215].  PIU's search occurred once SWAT had secured the scene after the incident, and

before anyone was permitted back in the residence, including Taylor's family.  [*Id.* at 212].  PIU

discovered K.W.'s handgun, but did not find any rifle shell casings, rifle ammunition, or any other

firearms at the scene.  [*Id.* at 212, 215].

## A.  Federal Rule of Evidence 401

The United States argues that the .223 casings are not relevant because "[t]here is no

evidence that anyone present during the shooting on March 13, 2020, shot, aimed, or even

possessed a rifle that would fire .223 rounds" and "the shell casings were found in locations—a

parking lot and an unoccupied apartment—that could have been accessed by any number of people after the shooting." [DE 52 at 217–18]. Defendant argues the shell casings are relevant based on his own statements that he saw a rifle during the shooting incident. [DE 60 at 336 ("While it is true that a rifle was never recovered by PIU officers it is also true that defendant has consistently stated that he was certain that he saw the individual at the end of the hallway in Ms. Taylor's apartment who shot Sergeant John Mattingly armed with a long gun rifle.")]. Sarpee—the man visiting Apartment 8 during the incident who found one of the .223 casings—has also stated that the shooting sounded like rifle fire. [DE 60 at 334–35]. And Defendant asserts that "Ms. Taylor's mother was granted access to her apartment on the morning of March 13, 2020, only hours after the incident," presumably suggesting that a rifle could have been overlooked by SWAT and PIU officers when securing and searching the residence, and that it could have been removed the next morning. [DE 60 at 336].

"Evidence is relevant if: it has *any* tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401 (emphasis added); *see United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) ("Courts do not require that each piece of evidence directly prove or disprove an element of the offense."); *United States v. Lang*, 717 F. App'x 523, 530, 538, 539 (6th Cir. 2017) (explaining Rule 401 threshold is a "low" bar). The two .223 shell casings minimally cross that threshold. Defendant maintains that he saw a rifle at the scene and argues that Sarpee will testify that he heard rifle fire the night of the incident. Additionally, one of the shell casings was found inside Apartment 4, and the FBI determined that both shell casings were discharged from the same weapon. Sarpee's potential testimony, coupled with the FBI's determination that the two casings were discharged from the same weapon, would give the .223 casings at least some tendency to show that a rifle may have been present at the scene (even if no

12

rifle were fired), therefore the casings satisfy Rule 401. *See Old Chief v. United States*, 519 U.S. 172, 179 (1997) (evidence relevant that represents merely "a step on one evidentiary route to the ultimate fact").

While the United States argues that multiple witnesses will testify to facts showing that no rifle was present at the scene during the shooting incident, that does not eliminate all probative value from the shell casings, but are appropriate subjects for cross examination. Although the Court acknowledges that "no bullets or weapons corresponding to the casings were recovered from the scene," [DE 52 at 218], that goes to the weight of the evidence and does not make the two shell casings irrelevant. *See United States v. Godinez*, 7 F.4th 628, 636 (7th Cir. 2021) (holding "[a]lthough the gun used . . . was not recovered, that does not render inadmissible the physical evidence that was recovered" where "the two bullets found were fired from the same gun"). A jury can decide what significance to assign the shell casings and weigh it against the evidence put forth by the United States. Because the two shell casings have some probative value for Defendant's case, the Court finds it improper to exclude under Federal Rule of Evidence 401 and 402.

**B. Federal Rule of Evidence 403**

The United States also argues that the .223 shell casings should be excluded under Federal Rule of Evidence 403. [DE 52 at 218]. It asserts the casings could "confuse, mislead, and distract the jury with a mini-trial on an irrelevant issue." [*Id.* at 220]. Additionally, the United States expresses concern that Defendant will use the shell casings for "appeals to jury nullification" because "[i]n the state trial, the defense used the casings to suggest that K.W. may have fired at officers with a rifle and Ms. Taylor's family somehow hid this fact from investigators." [*Id.* at 218].

The Court may exclude otherwise relevant evidence "if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403 (emphasis added); *see Roche Diagnostics Corp. v. Shaya*, No. 19-10264, 2023 WL 4198866, at *7 (E.D. Mich. June 27, 2023) ("In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission.") (citing *United States v. Jones*, 554 F. App'x 460, 473 (6th Cir. 2014) (White, J. concurring)).  First, the Court finds that the probative value of the casings is not substantially outweighed by danger of confusing or misleading the jury, or by the potential for a "mini-trial." The United States revealed at the pretrial conference that it has several witnesses who will discredit the shell casings and prove that no rifle was present at the scene during the incident.  The jury is entitled to hear Sarpee's testimony, evaluate his credibility, consider the shell casings, and weigh it against the United States' evidence.  Even if the United States were correct that the circumstantial evidence connecting the .223 casings to the incident is thin, that does not make their probative value substantially outweighed by the possibility of misleading the jury or confusing the issues. *See Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) ("Neither the appellate nor the district court is permitted to consider the weight or sufficiency of the evidence in determining relevancy and '[e]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'") (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)); *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) ("The [Rule 403] test is strongly weighted toward admission."); *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (explaining that Rule 403 is an "extraordinary remedy" and "carries a strong presumption in favor of admissibility") (citations and

14

quotations omitted). The Court is confident that the jury can consider the facts surrounding the discovery of the two shell casings and weigh the evidence presented by the parties.

As to jury nullification, it is not clear that Defendant's arguments about the two shell casings are designed to "encourage the jury to dislike the victims and acquit the defendant on that basis," as the United States argues. [DE 52 at 218]. To encourage jury nullification, an argument would need to advocate "the intentional disregard of the law as stated by the presiding judge." *United States v. Thomas*, 116 F.3d 606, 608 (2d Cir. 1997). As noted above, the Court will prohibit arguments that appeal to jury nullification at trial. *See Walsh*, 654 F. App'x at 697 (affirming trial court prohibiting jury nullification argument in closing argument); *Cf. United States v. Frazier*, 443 F. Supp. 3d 885, 902 (M.D. Tenn. 2020) (granting motion to prohibit arguments for jury nullification but explaining the motion "could just as easily be denied as unnecessary because all counsel in this case are experienced professionals who know that jury nullification arguments are improper" and that "there can be a fine line between zealous advocacy and improper arguments, but on which side of the line an argument falls can only be determined in context and at trial"). Therefore, because the Court is "hesitant . . . to issue a blanket exclusion concerning all arguments that could conceivably be construed as [jury nullification] [,]" it reserves specific rulings on this issue for trial. *United States v. Georges*, No. 2:20-CR-157 (2), 2021 WL 4191223, at *5 (S.D. Ohio Sept. 15, 2021).

Accordingly, for the reasons stated above, the Court **DENIES** the motion.

### Conclusion

Having considered the parties' motions and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.  Defendant's motion for scene view [DE 40] is **GRANTED**, in part, the exterior portions of Apartment 3 and 4 and **DENIED**, in part, with respect to the interior portions of Apartment 3 and 4; and

2.  Defendant's motion *in limine* to exclude visual depictions of the deceased and the unrelated curtain [DE 57] is **DENIED**; and

3.  The United States' motion *in limine* to exclude improper references to the victims' civil lawsuits and settlements [DE 49] is **GRANTED**; and

4.  The United States' motion *in limine* to exclude argument about equally available witnesses [DE 50] is **GRANTED**; and

5.  The United States' motion *in limine* to exclude references to rifle casings found after the shooting [DE 52] is **DENIED.**

Rebecca Grady Jennings, District Judge
United States District Court

October 25, 2023

cc:    Counsel of record