UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                    Plaintiff

v.                                                        Criminal Action No. 3:22-cr-84-RGJ

BRETT HANKISON                                                              Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant, Brett Hankison ("Hankison"), filed a Rule 29 motion for judgment of acquittal. [DE 139].  Recognizing the motion was filed out of time, Hankison contemporaneously moved to allow the Rule 29 motion despite missing the deadline.  [DE 138].  The United States stated at the December 13, 2023 status conference that it did not intend to respond, arguing only that the motion should be denied for the same reasons as the Rule 29 motion made at trial.  Accordingly, these motions are ripe for adjudication.  For the reasons explained below, the motion to file out of time [DE 138] is **GRANTED**, and the Rule 29 motion for judgment of acquittal [DE 139] is **DENIED**.

I.       **Motion to File Out of Time**

Under Federal Rule of Criminal Procedure 29(c)(1), a motion for judgment of acquittal (or a renewed motion) must be filed within 14 days of the Court discharging the jury.  However, if a motion is filed out of time, the Court can consider it "for good cause . . . on a party's motion" if "the party failed to act because of excusable neglect."  Fed. R. Crim. P. 45(b)(1)(B).

Courts consider four factors to determine whether neglect was excusable: "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *United States v. Maricle*, No.

CRIM.A. 6: 09-16-S, 2010 WL 3927570, at *2 (E.D. Ky. Oct. 4, 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993)).  The Sixth Circuit has applied these factors in the criminal context, *see United States v. Munoz*, 605 F.3d 359, 369 (6th Cir. 2010), and held that the reason for delay carries the most weight of the factors.  *Id.* at 372; *see also United States v. Elenniss*, 729 F. App'x 422, 425 (6th Cir. 2018).  Yet, courts should bear in mind that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Munoz*, 605 F.3d at 368 (quoting *Pioneer*, 507 U.S. at 395).  As such, "*Pioneer's* 'your lawyer, your fault' principle should be applied less stringently in the criminal context." *Elenniss*, 729 F. App'x at 425 (quoting *Munoz*, 605 F.3d at 369).

Turning to the first *Pioneer* factor, the reason for delay was an honest mistake.  After Hankison's trial ended, counsel returned to his office in Tennessee and instructed staff to enter the deadline for filing a renewed Rule 29 motion and a reminder to file it in their calendar.  [DE 138 at 5479].  The wrong deadline was inadvertently entered, using the 30-day state deadline instead of the 14-day federal deadline.  [*Id.*].  Hankison's counsel then had another trial to prepare for and conduct on December 4, 2023.  [*Id.*]  When he returned, he realized the deadline had passed.  [*Id.*].  While this error was within counsel's control, he did take steps to ensure he met the deadline.  The only reason he failed to meet the deadline was the clerical error in his calendar.  And upon discovery of the error, counsel acted quickly to remedy the issue by filing on December 10, 2023.  Even though this was an error within the movant's control, it is an understandable error that he took steps to promptly address upon realizing his mistake.  Thus, the Court finds reason to weigh this factor "less stringently," as this is a criminal case. *Elennis*, 729 F. App'x at 425.

The other three factors weigh in favor of finding excusable neglect.  First, it is hard to see how the United States would be prejudiced by a filing that is less than two weeks late.  The same

motion was already argued and denied at trial, and the United States has decided to retry the case on a new date set for October 2024. [*See* DE 142]. Second, the length of the delay is short. The motion was filed less than two weeks past the deadline, and Hankison's retrial is not until October 2024, so the motion's impact on proceedings is minuscule. Third, counsel's mistake was in good faith. He tried to set a reminder for himself so he would not miss the deadline amid preparations for his next trial and only failed because it was entered into the calendar incorrectly. He had good reason to rely on this system because he was focused on trial preparations. This demonstrates that counsel was not simply disregarding the requirement to timely file—he only missed the deadline due to his reliance on the calendar entry.

On balance, the Court finds it appropriate to consider Hankison's renewed Rule 29 motion, despite the fact that it was filed out of time. Three of four *Pioneer* factors weigh heavily in favor of finding excusable neglect, and the remaining factor does not weigh heavily against it. Bearing in mind that "[a]llowing some leeway in the criminal context is in keeping with *Pioneer's* observation that the excusable neglect 'determination is at bottom an equitable one,'" as well as "Justice Frankfurter's recognition that '[e]quity eschews mechanical rules; it depends on flexibility,'" *United States v. Orusa*, No. 3:18-CR-00342, 2023 WL 5125086, at *6 (M.D. Tenn. Aug. 10, 2023) (quoting *Pioneer*, 507 U.S. at 395 and *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)), the Court will consider Hankison's renewed Rule 29 motion for judgment of acquittal. Accordingly, Hankison's motion to file out of time [DE 138] is **GRANTED**.

## II.    Motion for Judgment of Acquittal

A court should grant a motion for judgment of acquittal under Rule 29 only when the evidence admitted at trial, viewed in the light most favorable to the United States, was insufficient to permit a rational trier of fact to find guilt beyond a reasonable doubt. *United States v. Connery*,

867 F.2d 929, 930 (6th Cir. 1989) (citations omitted).  Put differently, a court should not grant a motion of acquittal unless "'the prosecution's failure is clear.'"  *Id.* (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).  In evaluating challenges to sufficiency of evidence, courts must not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010) (citations and quotation marks omitted).  Instead, "[a]ll conflicts in the testimony are resolved in favor of the government, and every reasonable inference is drawn in its favor." *Id.* (citing *United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir.1992)).  "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (quoting *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (citation and quotation marks omitted)).

Hankison was charged with two counts of deprivation of rights under color of law, under 18 U.S.C. § 242.  [DE 1].  To be found guilty of a violation of § 242, the United States would have to prove that (1) Hankison acted under color of law; (2) Hankison deprived a victim of a Constitutional right; (3) Hankison acted willfully; and (4) the offense involved either the use of a dangerous weapon *or* an attempt to kill.  [DE 127 at 5163–66]; s*ee also United States v. Lanier*, 520 U.S. 259, 264 (1997).  In this case, the Constitutional right involved for Count I was the Fourth Amendment right to be free from unreasonable seizures, including the right to be free from a police officer's use of unreasonable force.  [DE 127 at 5163–64].  And for Count II, the Constitutional right involved was the right to be free from the deprivation of liberty without due process of law, including the right to be free from a police officer's use of unjustified force that shocks the conscience.  [*Id.* at 5165–66].  The parties stipulated that the first element was met, and Hankison

4

was acting under color of law,[1] [*Id.* at 5163, 5165], therefore only the second, third, and fourth elements are at issue for each count.

At the close of the United States' case, Hankison moved for judgment of acquittal under Rule 29(a). The Court denied the motion, reciting the testimony and other evidence that a reasonable jury could rely on to support a conviction. Hankison provides no new argument in his renewed motion under Rule 29(c)(2) to explain why the evidence "in this case is insufficient to sustain a conviction." [DE 139 at 5482].

## A. Deprivation of a Constitutional Right

To prove this element for Count I, the United States had to show Hankison's use of force was objectively unreasonable under the circumstances. [DE 127 at 5167–69]; *see also Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) ("In assessing a claim of excessive force, courts ask whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.") (citation and quotation marks omitted). To prove it on Count II, the United States had to show Hankison's use of force was so egregious and outrageous that it shocked the conscience, which may occur when such force is motivated by an intent to harm, punish, or retaliate against suspects in a manner unrelated to a legitimate law enforcement purpose. [DE 127 at 5170–71]; *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level") (citation omitted). The United States produced

---

[1] Even if the parties had not stipulated that this element was met, sufficient evidence existed to support a conviction. Several police officers testified about his conduct when acting as an on-duty, uniformed police officer executing a search warrant. This would have been enough for a reasonable jury to find beyond a reasonable doubt that this element was met. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.")

enough evidence regarding the same underlying conduct by Hankison to support a conviction on this element for both counts.

For instance, the United States introduced substantial witness testimony, including from victims who lived in Apartment 3 and Apartment 4 on March 13, 2020. Chelsey Napper and Cody Etherton explained how bullets flew through the walls of their apartment, despite not being subjects of the search warrant. [DE 96 at 3998–4002; DE 109 at 4609–13]. Kenneth Walker testified to firing a single shot in fear as officers broke down the front door, and subsequently experiencing gunfire coming through the bedroom window. [DE 104 at 4368, 4371–72]. Police officers also testified about what they perceived and how they reacted regarding Hankison's conduct. One officer testified that Hankison lined up behind him in the stack, away from the door where Kenneth Walker fired one shot toward police. [DE 96 at 4051]. Officers also testified that they could not see through the sliding glass door or the windows, and thus could not identify a target, [*See*, *e.g.*, DE 96 at 4061–62; DE 101 at 4173–74; DE 111 at 4728], and that they were shocked to learn that an officer *had* fired through the glass door and bedroom window. [*See*, *e.g.*, DE 96 at 4066–67; DE 101 at 4172–74; DE 106 at 4559–61; DE 111 at 4737–41]. Additionally, the United States put on multiple witnesses, including some experts, who processed and analyzed evidence from the scene: Sergeant Jason Vance, FBI Special Agent Jones, Bryce Ziegler, Michael Van Arsdale, and Steven Hughes. Finally, the United States introduced photographic and video evidence that showed bullets in both apartments, the layout of each apartment and the building as a whole, the appearance of the sliding glass door and bedroom windows, and the location of bullet holes from Hankison's shots. Based on this evidence, a reasonable juror could find Hankison's

actions objectively unreasonable under the circumstances or shocking to the conscience to support conviction.[2]

### B. Willfulness

To prove this element for both Counts, the United States had to show Hankison acted voluntarily and intentionally with the specific intent to do something the law forbids.  [DE 127 at 5172].  Here, that meant using force knowing it was unjustified.  *Id.*; *see also United States v. Couch*, 1995 WL 369318, at *4 (6th Cir. 1995) ("As long as the accused specifically intends to use more force than is reasonable under the circumstances, he acts willfully and thus runs afoul of § 242.") (citation omitted).  The United States produced enough evidence on this element that a reasonable jury could have found it met beyond a reasonable doubt.

Several witnesses—including at least six law enforcement officers—testified about basic concepts taught to every officer in Louisville Metropolitan Police Department training, explaining the importance of establishing target identification and isolation before shooting at a perceived threat.  [*See*, *e.g.*, DE 96 at 4030–34, 4108; DE 103 at 4234–73; DE 106 at 4449–61; DE 111 at 4729; DE 116 at 4814].  The United States also introduced portions of the standard operating procedures directly.  [PX 171; DX 1].  Several witnesses testified that they could not see through the sliding glass door or bedroom window that Hankison fired through.  [*See*, *e.g.*, DE 96 at 4042–

---

[2] Many of Defendants arguments to support a Rule 29 dismissal were based in some form on his own version of the events. While all arguments at this phase are resolved in favor of the government and the Court does not weigh credibility, *Siemaszko*, 612 F.3d at 462, regardless of which witnesses the jury found credible, evidence was sufficient to permit a reasonable jury to convict on this element.  A reasonable jury could have believed the government witnesses that Hankison could not see into the apartment and shot blindly in the darkness after the other officers had withdrawn from the vestibule.  But even if the jury believed Hankison's version of events—that he saw muzzle flashes and shot towards those muzzle flashes—a reasonable juror could find Hankison's actions objectively unreasonable under the circumstances or shocking to the conscience because Hankison would have been shooting toward his fellow officers' muzzle flashes, as Walker fired only one shot.  In any event, the United States produced sufficient evidence to support a conviction.

43; DE 101 at 4141–45; DE 106 at 4557–58; DE 111 at 4728; DE 116 at 4821–25].  Additionally, Ju'Niyah Palmer testified as to the condition of her bedroom window and the type of curtains and blinds she regularly used to cover it, and Kenneth Walker testified that the blinds and curtains covering the glass door were "always closed." [DE 103 at 4315–19; DE 104 at 4355].  A detective testified that he did not see any officers shooting from the sidewalk, and that he saw muzzle flashes coming from the parking lot area.  [DE 101 at 4167–68].  Finally, the United States also introduced several exhibits showing the coverings of the sliding glass door and bedroom window that the jury could have used to determine Hankison could not see his target.  [*See*, *e.g.*, PX 8b; PX 18; PX 20; PX 21; PX 33; PX 44; PX 169].  This evidence was sufficient for a reasonable jury to convict on this element.

### C.  Dangerous Weapon or Attempt to Kill

A reasonable jury could have found that Hankison's offense involved a dangerous weapon or attempt to kill.  Several witnesses testified about him firing his gun through the sliding glass door and a bedroom window of Apartment 4.  The parties stipulated to the fact that he fired 10 shots into the building and that the gun was Hankison's.  [*See* DE 111 at 4710 ("MS. GOTFRYD: The parties have stipulated and agreed that the gun belonged to the defendant, Brett Hankison.")].  As a result, a reasonable jury could find that a gun is a dangerous weapon, and this alone was enough for a rational trier of fact to convict on the fourth element.

### III.  Conclusion

Because the United States produced sufficient evidence at trial to permit a rational trier of fact to find guilt beyond a reasonable doubt, this is not a case in which "'the prosecution's failure is clear.'"  *Connery*, 867 F.2d at 930 (quoting *Burks*, 437 U.S. at 17).  Accordingly, for the reasons

explained and the Court being sufficiently advised, Hankison's Rule 29 motion for judgment of acquittal [DE 139] is **DENIED**.

Rebecca Grady Jennings, District Judge

United States District Court

January 10, 2024

cc: counsel of record