UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                    Plaintiff

v.                                         Criminal Action No. 3:22-cr-84-RGJ

BRETT HANKISON                                             Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

On July 5, 2024, Defendant Brett Hankison ("Hankison") filed a Motion to Compel seeking

access to Breonna Taylor's ("Taylor") personal cell phone. [DE 150 at 5517]. Hankison requests

that (1) his expert, Dr. Michael Littrell ("Dr. Littrell"), be allowed to attempt an extraction on the

phone and (2) the Court hold a hearing on the motion. [*Id.* at 5517, 5519–21]. The United States

responded in opposition, Hankison replied, and the United States filed a sur-reply.[1] [DE 151; DE

152; DE 153]. This motion is ripe. For the reasons below, Hankison's Motion to Compel is

**DENIED**.

### I. BACKGROUND

Taylor's phone has been in the custody of law enforcement since it was recovered in March

2020. [DE 150 at 5519]. The phone was initially recovered by the Louisville Metro Police

---

[1] The Court notes that sur-replies are generally disfavored "as they are usually a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012); *see also Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020). But sur-replies may be permitted "in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). Here, the United States purports to file its sur-reply in order to "address new arguments and false accusations raised for the first time" in Hankison's reply. [DE 153 at 5579]. Although the United States did not move for leave to file a sur-reply, the Court will consider it only to the extent that it responds to new arguments raised in Hankison's response. *See Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 748 (W.D. Ky. 2019) (citing *Key*, 551 F. App'x at 264) ("[T]he question of whether to permit [a sur-reply] is a matter left to the broad discretion of the trial court.").

Department ("LMPD"), and the Federal Bureau of Investigation ("FBI") took custody of it on March 31, 2021.  [DE 151 at 5542].  Prior to the FBI taking custody of the phone, Kentucky forensic analysts attempted to extract data from it.  [*Id.*].  Dr. Littrell worked as a "digital forensic examiner at the Kentucky Office of the Attorney General at the time." [*Id.*].  Kentucky analysts attempted to unlock the phone using three incorrect passcodes provided by Dr. Littrell.  [*Id.*].  In a discovery letter sent on November 27, 2022, the United States informed Hankison that it had possession of Taylor's phone but had not sought to review data associated with it because it did not believe it was relevant to the case.  [*Id.*].

Hankison initially contacted the United States regarding an extraction report from the phone in January 2023.  [DE 150 at 5519; DE 151 at 5543].  The United States agreed that it would provide Hankison with "any data recovered from the phone that was generated during the period from 12:15–12:45 a.m. on March 13, 2020," but the FBI's extraction attempts failed.  [DE 151 at 5543].  The United States then provided a report to Hankison dated April 6, 2023 detailing the FBI's unsuccessful attempts to extract information from the phone.  [DE 150 at 5519].  The parties did not discuss the phone further until after the conclusion of this case's first trial in November 2023. [DE 151 at 5544].

On June 5, 2024, after conferring with Dr. Littrell, Hankison again contacted the United States, explaining that Dr. Littrell believed he could perform an extraction on the phone using software capable of a "brute force" technique.  [DE 150 at 5520].  Hankison asserts that he and the United States conferenced via Zoom on June 12, 2024 to discuss "recent advances and updates to forensic software" making it possible to extract data from the phone "without entering a passcode." [*Id.*].  The United States confirmed that the FBI had the most up-to-date GrayKey and Cellebrite technology and again attempted to perform an extraction using both "the latest standard versions"

of the software and "premium versions that are not available to the public." [DE 151 at 5544].  On

June 21, the United States informed Hankison that while the FBI had the requisite software capable

of accessing Taylor's version of iPhone, it could not perform a successful extraction "because of

the condition of this specific phone." [DE 150 at 5520; DE 151 at 5544 (explaining phone was in

"'non-SE bound' state, likely because of the prior unsuccessful attempts to enter passcodes")].

On June 24, the United States indicated to Hankison that it sought to consult with one final

FBI expert.  [DE 150 at 5521].  But the FBI's Electronic Device Analysis Unit in Quantico,

Virginia confirmed that no other tools existed that could perform a successful extraction.  [DE 151

at 5544].  On June 27, the United States reconfirmed that the FBI could not access the phone in its

"current state" and informed Hankison that it could not allow Dr. Littrell to inspect the phone.

[DE 150 at 5521].  The FBI explained that Dr. Littrell's "unvalidated equipment" could potentially

"brick" the phone and erase all of its data, offering instead for Hankison to observe an FBI attempt

to perform a transaction or "facilitate a conversation" between Hankison and the FBI.  [DE 151 at

545].  Hankison refused these offers.  [*Id.*].

After discussions between the parties broke down, Hankison filed his Motion to Compel

on July 5.  [DE 150].  That motion was filed after the Court's deadline set out in its scheduling

order for the second trial, which instructed that "[a]ny motion for additional discovery or

inspection shall be made on or before March 22, 2024."  [DE 148 at 5512].

## II. DISCUSSION

Hankison asserts that he is entitled to inspect the phone under Federal Rule of Criminal

Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150

(1972). He argues that the phone's data is material to his defense because targets of other search

warrants executed the same day could have notified Taylor that a search of her apartment was

imminent and because Taylor's boyfriend, K.W., had access to the phone.  [DE 150 at 5522–23].
The United States responds that the motion should be denied because it is untimely, the phone's
data is not material, and Hankison does not allege that Dr. Littrell would use any method not
already available to the FBI.  [DE 151 5545–53].

### A.  Timeliness

"If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is
untimely.  But a court may consider the defense, objection, or request if the party shows good
cause."  Fed. R. Crim. P. 12(c)(3).  "Good cause is a flexible standard heavily dependent on the
facts of the particular case as found and weighed by the district court in its equitable discretion.
At a minimum, it requires the party seeking a waiver to articulate some legitimate explanation for
the failure to timely file."  *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010).  A party
usually cannot establish good cause if untimeliness results from a "conscious decision not to file a
pretrial motion before the deadline."  *Id.* (citing *United States v. Turner*, 602 F.3d 778, 787 (6th
Cir. 2010)).

Hankison's Motion to Compel does not address timeliness at all, even though it was filed
on July 5, 2024—over three months past the deadline of March 2.  [DE 150].  In fact, the motion
does not even acknowledge that it was filed late.  In his reply, Hankison asserts that the United
States' representations before June 12 led him to believe that the FBI's failed attempts to access
the phone were due to software limitations, not the condition of the phone.  [DE 152 at 5565–66].
He argues that if "the defense had been told the truth in April 2023, that the phone was 'bricked'
by law enforcement, we would have immediately taken action to have the phone examined by a
defense expert."  [*Id.* at 5567].  Hankison also broadly asserts that "[a] basic understanding" of
iPhones shows that "disabling the phone was not an accident but an intentional act."  [*Id.* at 5566].

These arguments do not constitute "good cause" for Hankison's untimeliness.  The United States asserts that it has consistently maintained in communications with Hankison that the FBI's tools were ineffective because of the condition of the phone, pointing out that a document provided in discovery on September 15, 2022 showed Dr. Littrell himself (while still working for the state) provided the attempted passwords before the FBI took custody of the phone.  [DE 153 at 5579–80 (referencing DE 151-1 at 5559–61)].  Additionally, the United States attached an email from Dr. Littrell (again, during his time working for the state) expressing that GrayKey had the ability to "brute force" the passcode in May 2021.  [DE 151-2 at 5562].   And finally, as the United States points out, Hankison states that Dr. Littrell intends to use "commercially available software" and never alleges that Dr. Littrell will do anything differently than the FBI has already done.  [DE 153 at 5582].  Therefore, it appears that Hankison both had notice that law enforcement had attempted to unlock the phone with incorrect passcodes as early as September 2022 and has made no showing that new technology unavailable to the FBI came to light after the motion deadline had passed.  As a result, Hankison has not demonstrated good cause for his untimeliness.

## B.  Materiality

While Hankison's untimeliness is a sufficient basis to deny the motion, the Court finds it also should be denied because the evidence sought is not material.  Federal Rule of Criminal Procedure 16 provides that "the government must permit the defendant to inspect . . . data . . . [and] tangible objects" if "the item is material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i). Under that rule, "[i]t is a defendant's burden to make a *prima facie* showing of materiality."  *United States v. Dobbins*, 482 F. App'x 35, 41 (6th Cir. 2012) (citing *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991)).  While the Sixth Circuit has never "authoritatively defined" materiality, it has said that "there must be an indication that pre-trial disclosure would have enabled the defendant to 'alter the quantum of proof in his favor.'"  *United States v. Lykins*, 428 F. App'x 621,

624 (6th Cir. 2011); *see also United States v. Sanders*, 106 F.4th 455, 473 (6th Cir. 2024) (quoting *United States v. Harney*, 934 F.3d 502, 508 (6th Cir. 2019)) ("We have uniformly held that Rule 16(a)(1)(E)(i) allows for production of only those items that would 'help [the defendant] combat the government's case against him as to one of the charged crimes.'"). When assessing materiality, the Court should "consider the logical relationship between the information withheld and the issues in the case." *Lykins*, 428 F. App'x at 624.

Hankison is charged with two counts of deprivation of rights under color of law [DE 1]. *See* 18 U.S.C. § 242. As the Court identified in the jury instructions for the first trial, the elements for these charges are: (i) "the defendant acted under color of law"; (ii) "the defendant deprived a victim . . . of a Constitutional right" to be free from either (Count 1) "unreasonable seizures, which includes the right to be free from a police officer's use of unreasonable force" or (Count 2) "the deprivation of liberty without due process of law, which includes the right to be free from a police officer's use of unjustified force that shocks the conscience"; (iii) "the defendant acted willfully"; and (iv) "the offense involved either (1) the use of a dangerous weapon or (2) an attempt to kill." [DE 127 at 5163, 5165].

Hankison asserts (1) that individuals who were subject to other search warrants on March 13, 2020 could have contacted Taylor to warn her before law enforcement arrived at her apartment and (2) that her boyfriend, K.W., had access to her phone and "called multiple individuals" before "surrendering to officers." [DE 150 at 5522]. For these reasons, he argues that information on the phone "would be material, exculpatory and compelling" for his case. [*Id.* at 5522–23]. The parties dispute whether such information could be found on the phone. The United States argues that toll records show "no incoming or outgoing calls or text messages from Ms. Taylor's phone number in the four hours preceding the shooting" [DE 151 at 5549], while Hankison points out that "not

all messages are recorded on toll records," meaning Taylor's phone could have received messages or calls via iMessage, WhatsApp, Signal, etc. without them appearing in toll records [DE 152 at 5568].

Even if such records existed and could be recovered from the phone, they would not rebut any of the United States' case in chief.  *See Lykins*, 428 F. App'x at 624 (quoting *United States v. Armstrong*, 517 U.S. 456, 462 (1996)) (explaining that "'defense' within the meaning of Rule 16 means the 'defendant's response to the Government's case in chief'").  As the United States argues, none of the potential evidence that Hankison speculates could be found on the phone would accomplish this purpose because it would not relate to an element of the crimes charged.  [DE 151 at 5548 (quoting DE 128 at 5339 and *Graham v. Connor*, 490 U.S. 386, 396 (1989))].  The United States is correct that, because the question of whether "force was objectively reasonable under the circumstances" depends upon "all of the facts and circumstances as they would be viewed by an ordinary and reasonable officer on the scene *at the moment that force was used*" [DE 128 at 5339 (emphasis added)], information showing Taylor had notice of search warrants being executed that night would not be relevant to the crimes charged.  *See Sanders*, 106 F. 4th at 474 (quoting *United States v. Pirosko*, 787 F.3d 358, 367 (6th Cir. 2015)) ("Said differently, Rule 16 'applies only to shield claims that refute the [g]overnment's arguments that the defendant committed' the offenses in the indictment.").

Hankison does not assert that he could have known of any possible communications sent or received on Taylor's phone before arriving at her apartment, nor does he explain how this would have affected "the facts and circumstances" known to him "at the moment that force was used." Additionally, Hankison has provided no support for his assertion that K.W. accessed Taylor's phone, and no information indicates K.W. made any phone calls on any phone but his own.  [DE

151 at 5549]. Even if Hankison did support his assertion, whether K.W. accessed the phone is immaterial for the same reason: it would not rebut the United States' case in chief.

In his reply, Hankison asserts that the phone's data might show that Taylor was connected to drug trafficking, undercutting testimony offered by the United States at trial that Taylor was not involved in any wrongdoing. [DE 152 at 5569]. Because this argument is raised for the first time in the reply, it is forfeited. *See United States v. Cadieux*, 846 F. App'x 389, 394 (6th Cir. 2021) (defendant "forfeited this argument by raising it for the first time in his reply"); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an 'argument' as 'forfeited when it was not raised in the opening brief.'").

But even setting forfeiture aside—and considering Hankison's argument along with the United States' sur-reply—the United States is correct that Hankison "cites no evidence" that Taylor was involved in drug trafficking and offers nothing more than pure speculation "to think that such evidence would be found on her phone." [DE 153 at 5580–81]. *See United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999) (denying *Brady* violation claim because defendant "offered no support for his contention that personnel files might contain information important to his case"); *United States v. Johnson*, No. 09-CR-20410-BBD, 2010 WL 3529526, at *2 (W.D. Tenn. Aug. 17, 2010), *report and recommendation adopted*, 2010 WL 3529522 (Sept. 10, 2010) ("[A] speculative, nonspecific claim that an officer's personnel file might contain material helpful to the defendant is not sufficient to entitle the defendant to the officer's file or even to warrant the court conducting an *in camera* inspection of the file to determine if it contains relevant information."); *United States v. Maga*, No. 3:08–CR–166, 2009 WL 1607739, at *2 (S.D. Ohio 2009); *United*

*States v. Floyd*, 247 F.Supp.2d 889, 901 (S.D. Ohio 2002). As Hankison points out, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present *facts* which would tend to show that the [g]overnment is in possession of information helpful to the defense." [DE 150 at 5522 (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)) (emphasis in motion)]. At best, Hankison's assertions of materiality are speculative, which is insufficient to prevail on his Motion to Compel. As a result, even if the information Hankison seeks was present on the phone and could be recovered, Hankison has failed to meet his "burden to make a *prima facie* showing of materiality" for the purposes of Rule 16. *Dobbins*, 482 F. App'x at 41.

Moreover, the United States is not actually withholding any *information* in its possession on Taylor's phone—it is merely refusing to allow Hankison's own expert to perform an independent attempt to extract data. Hankison has not alleged that Dr. Littrell has access to any technology unavailable to the FBI, and Hankison has refused the United States' offers to talk with FBI experts and even observe an FBI extraction attempt. So the United States' position is imminently reasonable. Hankison identifies no cases where a court has permitted a defendant to do something similar. This is particularly critical here, as other cases surrounding the same incident are still being litigated. [DE 151 at 5552]. *See United States v. Jaynes*, No. 3:22-cr-85-CRS (W.D. Ky.); *United States v. Goodlett*, No. 3:22-cr-86-RGJ (W.D. Ky.).

### III. CONCLUSION

Because the facts are not in dispute, there is no need for an evidentiary hearing. *See United States v. Michael*, No. 3:16-cr-101-RGJ, 2019 WL 208897, at *2 (W.D. Ky. Jan. 15, 2019) (citing *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001)) ("Courts have discretion to decide whether to hold evidentiary hearings on pre-trial motions."). Likewise, the Court does

not find that oral argument would be helpful in deciding the motion.  For the reasons explained, and the Court being otherwise sufficiently advised, Hankison's Motion to Compel [DE 150] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 6, 2024

cc: counsel of record