UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                Plaintiff

v.                                                                    Criminal Action No. 3:22-cr-84-RGJ

BRETT HANKISON                                                                         Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Brett Hankison is charged with two counts of deprivation of rights under color of law [DE 1]. *See* 18 U.S.C. § 242. The indictment alleges that he, while executing a search warrant, "shot[] through a window and a sliding glass door, both of which were covered with blinds and curtains." [DE 1 at 2]. Trial is scheduled to begin October 15, 2024. [DE 184 at 5958].

The Court conducted a final pretrial conference on September 13, 2024. [*Id.* at 5957]. The parties' outstanding motions and other pretrial matters were discussed. [*Id.* at 5958]. Several motions were resolved at the conference. [*See id.*]. The Court reserved ruling and allowed the parties one week to submit any supplemental briefs on the remaining six motions. [*Id.*]. Five publicly filed motions regarding the admissibility of evidence are ripe for review. The sixth motion [DE 160] is sealed [*see* DE 184 at 5958] and was resolved by separate order [DE 188].

The United States moves to exclude expert witness testimony [DE 154], to introduce Rule 404(b) evidence of prior bad acts [DE 155], to exclude references to two rifle casings found at the scene [DE 156], and to exclude references to prior legal proceedings. [DE 162]. Hankison responded in writing to each motion, except to the motion to exclude reference to prior legal proceedings. [DE 175; DE 176; DE 182; DE 180]. Hankison moves to exclude characterizations of his use of force. [DE 161; DE 183]. The United States responded. [DE 174]. This order also

addresses an issue newly raised at the final pretrial conference regarding disclosure of an expert witness's compensation.

For the reasons below, the United States' motion to exclude expert witness testimony [DE 154] is **GRANTED**; the United States' motion to introduce Rule 404(b) evidence [DE 155] is **DENIED without prejudice**; the United States' motion to exclude references to two rifle casings [DE 156] is **DENIED**; and the United States' motion to exclude references to prior legal proceedings [DE 162] is **GRANTED**. Hankison's motion to exclude characterizations of his use of force [DE 161] is **DENIED**. Furthermore, Hankison **SHALL**, before trial, disclose expert witness James W. Borden's compensation to the United States.

## I. MOTIONS IN LIMINE STANDARD OF REVIEW

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence in limine pursuant to their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[P]reliminary questions" are often are determined "pretrial . . . in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *see also* Fed. R. Evid. 103, 104. The "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002) (citing *Luce,* 469 U.S. at 41 n.4). This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling in limine, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d

1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984)). Thus, even where a motion in limine is denied, the Court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239). Likewise, the Court has discretion to alter or amend a prior in limine ruling at trial. *Luce,* 469 U.S. at 41–42.

## II. MOTIONS IN LIMINE DISCUSSION

### A. United States' Motion to Exclude Expert Witness Testimony [DE 154]

Hankison has retained Borden as a use of force expert. [*See* DE 154-1]. Borden's "Case Review & Expert Report" purports to "opine on the reasonableness of [Hankison]'s stated perceptions and known decisions and actions during the incident." [*Id.* at 5605]. The report concludes "that the use of deadly force by Ofc. Hankison was deliberate, intentional, and for the purpose of stopping [a] perceived deadly threat . . . and, thereby reasonable." [*Id.* at 5610]. The United States moves to exclude from Borden's testimony (1) "five categories" of information reflected in Borden's expert report and (2) "any undisclosed opinions" regarding "police performance dynamics" that are not stated in the expert report. [DE 154 at 5585–86]. Hankison argues that a ruling on Borden's testimony "at this time would be premature." [DE 175 at 5901].

### 1. *Admissibility of Opinions in Borden's Expert Report*

In light of Borden's statements in his report [DE 154-1], the United States moves to exclude from trial:

> (1) testimony opining about whether the defendant's force was "reasonable," "justified," or "appropriate," which would constitute an impermissible legal conclusion; (2) testimony about the defendant's intent, reasoning, or mental state at the time of the shooting . . . (3) testimony instructing the jury on the legal standard governing the defendant's use of force . . . (4) testimony purporting to resolve disputed issues of fact and make credibility determinations . . . and (5) testimony referencing otherwise inadmissible evidence . . . .

[DE 154 at 5585–86]. The United States asserts that these categories of evidence are impermissible under the rules of evidence or usurp the province of the jury.

3

The law supporting the United States' arguments on these points is generally well-established. First, "objective reasonableness is a legal conclusion," not an appropriate topic for expert testimony. *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 366 (6th Cir. 2017). Borden may not apply the reasonableness standard to this case or opine about whether Hankison's actions were objectively reasonable. [*See* DE 154 at 5590]. Second, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state . . . that constitutes an element of the crime charged." Fed. R. Evid. 704(b). As a result, Borden may not opine about Hankison's intentions or beliefs on the night in question. [*See* DE 154 at 5591–92]. Third, an expert witness may not define legal standards or terms as the Court will in its jury instructions. *United States v. Mazumder*, 800 F. App'x 392, 395 (6th Cir. 2020). Borden may not purport to define or instruct the jury on lawful self-defense, lawful defense of others or unlawful excessive force. [*See* DE 154 at 5592–93]. Fourth, "[e]xperts may not testify about the credibility of other witnesses." *Smith v. Jones*, 721 F. App'x 419, 423 (6th Cir. 2018) (citing *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999)). While Borden may expressly assume certain facts for the sake of forming his opinions, he may not weigh the credibility or reliability of fact witnesses' testimony or exhibits. [*See* DE 154 at 5593–94]. And finally, "if the facts or data" underlying an expert opinion "would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Borden may not present to the jury overly inflammatory photographs or inappropriate hearsay statements. [*See* DE 154 at 5598].

The United States argues that "Mr. Borden's report and the defendant's expert notice reflect an intent for Mr. Borden to give this impermissible testimony at trial." [*Id.* at 5586]. Hankison's response brief does not counter the United States' authorities. [*See* DE 175]. And as a

4

result, it appears that those points of law are undisputed. To the extent stated herein, the United States motion to exclude the expert report categories specified is **GRANTED.** The Court expects counsel to comply with the Federal Rules of Evidence and the law, including the specific points of law above, when presenting Borden's testimony.

### 2. *Admissibility of "Any Undisclosed Opinions" Regarding "Police Performance Dynamics"*

The United States also moves to exclude "any undisclosed opinions about how 'police performance dynamics' such as stress, adrenaline, and cognitive biases, may have impacted the defendant's actions or perceptions on the night of the shooting." [DE 154 at 5599]. While Borden's report initially claims he is "examining the police performance dynamics, decision-making process and actions based on the statements of the involved officer and the existing evidence in the case" [DE 154-1 at 5603], according to the United States, "[t]he body of the report . . . discloses no opinions relating to how performance dynamics may have impacted the events involved in this case." [DE 154 at 5600].

The United States questions whether Borden "could qualify as an expert witness" on this topic as "he is not a behavioral scientist and his CV does not disclose any formal education that he has received in kinesiology, psychiatry, neuropsychiatry, psychology, biomechanics, exercise science, or related fields." [*Id.* at 5599]. The United States also argues that Borden is unqualified to opine on this issue because he has not "examined the defendant—or even met him" and therefore "has no basis to formulate and offer opinions about how any 'performance dynamics' or 'cognitive biases' may have affected the defendant at the time of the events charged . . . ." [*Id.*]. Finally, the United States argues, citing Federal Rule of Criminal Procedure 16, that any "opinions relating to performance dynamics or cognitive biases" have not been disclosed and therefore are inadmissible. [DE 154 at 5599–600]. Hankison fails to respond to the substance of the United States' motion,

offering only that the motion is "premature" and that somehow the United States should have given more notice regarding this motion. [DE 175 at 5901].

First, to the extent that Hankison suggests that the motion is untimely or comes as a surprise, the Court disagrees. The Court's pretrial order stated that "[i]f required to be disclosed pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) or 16(b)(1)(C), **any expert testimony** the United States or Defendant intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief, including a summary of the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications, shall be disclosed **on or before August 12, 2024**." [DE 148 at 5514 (emphasis in original)]. Further, "[d]efensive motions . . . including any motion to exclude the testimony of an expert witness pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), shall be filed **no later than August 29, 2024**. [*Id.* (emphasis in original)]. Hankison gave notice of the intent to "utilize James Boren as an expert in the areas of police use of force, force investigations and analysis, police decision-making in critical incidents, and associated police training and policy" on August 12, 2024. [DE 175 at 5901]. "Between the dates of August 13, 2024, and August 15, 2024," the Government was supplied with any items it requested that were required by Rule 16(b)(1)(C)(iii). [*Id.*]. The United States then, in keeping with the Court's deadlines for *Daubert* motions and motions in limine, filed this motion on August 29, 2024. [DE 154]. As such, the motion is timely.

Federal Rule of Criminal Procedure 16 governs the required contents of expert disclosures, providing in relevant part that the disclosures must include "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and "the bases and reasons for them[.]" *United States v. Hamaed*, No. 20-CR-20162, 2024 WL 3771426, at *1 (E.D. Mich. Aug. 13, 2024) (quoting Fed. R. Crim. P. 16(g)(iii)). To the extent that the report indicates that Borden

6

intends to opine on "police performance dynamics," and to the extent that "[t]he body of the report . . . discloses no opinions relating to how performance dynamics may have impacted the events involved in this case" [DE 154 at 5600], the failure to disclose any such opinions would constitute a breach of Rule 16(g)(iii) and be subject to sanctions under Rule 16(d)(2).[1] Because it does not appear that the opinions have been properly disclosed and Hankison has failed to respond to the substance of the motion or deny the intent to offer such opinions about "police performance dynamics," the Court **GRANTS** the United States motion to exclude the undisclosed opinions and need not reach the merits of Borden's qualifications on this issue.

### B. United States' Motion to Introduce Evidence of Prior Bad Acts [DE 155]

The United States moves to admit what it calls "evidence of [Hankison]'s aggressive, reckless conduct during the execution of two search warrants that were served approximately three years before the shooting charged . . . in this case." [DE 155 at 5625]. In short, it is asserted that Hankison (1) ignored LMPD procedures and training by rushing between SWAT officers and a suspect in execution of a 2016 search warrant, risking a "crossfire," and (2) ignored training and protocol, "aggressively enter[ing] the scene" of a 2017 search warrant execution by "sp[eeding]

---

[1] If a party fails to comply with [Rule 16], the court may:
    (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
    (B) grant a continuance;
    (C) prohibit that party from introducing the undisclosed evidence; or
    (D) enter any other order that is just under the circumstances.
Fed. R. Crim. P. 16(d)(2). In deciding whether suppression of evidence is an appropriate remedy, a district court should consider:
    (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess.
*United States v. Maples,* 60 F.3d 244, 247 (6th Cir.1995). "District courts should embrace the 'least severe sanction necessary' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to circumstances in which it is necessary to serve remedial objectives." *Id.* at 247–48.

the wrong way down Dixie Highway in his police vehicle" "with his gun pointed of his open car window," exposing a covert SWAT operation and its officers. [*Id.* at 5627–29]. Hankison responded [DE 176] and submitted a post-conference brief [DE 182].

   1. *Standard*

Rule 404 provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Similarly, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, courts may allow evidence of prior bad acts when offered for non-propensity purposes "such as proving motive . . . intent . . . knowledge . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Where such evidence is offered or challenged, courts undertake a three-step inquiry. *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004). First, the Court must make a preliminary determination of whether there is sufficient evidence that the "other acts" took place. *Id.* Second, the Court must determine whether the "other acts" evidence is admissible for a proper purpose under Rule 404(b). *Id.* Finally, the Court must determine whether the "other acts" evidence is more prejudicial than probative. *Id.*

For the second step, to determine whether evidence is admissible for a proper purpose, the Court must find that (1) the purpose of admitting prior acts is one that is allowed under Rule 404(b), (2) the purpose for which the evidence is offered is material or "in issue," and (3) the evidence is probative of the purpose for which it is offered. *United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008); *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

Once the Court decides that evidence of other crimes, wrongs, or acts of a defendant is admissible under Rule 404(b), then the Court "must carefully identify in its instructions to the jury,

8

the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden by Rule 404(b)." *Bell*, 516 F.3d 441 (quoting *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994)).

### 2. *Analysis*

#### i. *Whether the Acts Occurred*

First, the Court "must make a preliminary determination regarding whether there is sufficient evidence that the 'other acts' took place." *Lattner*, 385 F.3d at 955. The hurdle is low: less than a preponderance of the evidence. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Still, "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred, and that the defendant was the actor." *Id.*; *accord.* Fed. R. Evid. 104(b). Here, it remains unclear whether any dispute exists at this step. The United States describes witnesses' potential testimony at length but has not filed any supporting exhibits. [DE 155 at 5626–29, 5631–32]. It appears this evidence was provided in some form to Hankison, but not the Court. [DE 182 at 5949]. While Hankison attacks the United States' evidence arguing they cannot prove the acts occurred and provides an exhibit, he does not outright deny that the two incidents occurred. [DE 176 at 5907, 5909; DE 176-2; DE 182 at 5948–49]. While Hankison also stresses that he was not formally disciplined for the incidents, that is not the issue; his *actions* are. [DE 176 at 5905–07, 5909; DE 182 at 5949]. Regardless, the Court has no verifiable information before it that would permit a finding as to the first step of the analysis.

#### ii. *Non-Propensity Purposes*

Second, the Court "must . . . determine whether th[e] 'other acts' are admissible for a proper purpose under Rule 404(b)." *Lattner*, 385 F.3d at 955. "Rule 404(b) is an inclusionary . . . rule," *id.* at 956, and the consideration of "a[ny] material issue other than character" can be a proper

9

purpose, *Huddleston*, 485 U.S. at 686. The United States argues that Hankison's prior acts can establish his "intent, motive, knowledge, and lack of mistake." [DE 155 at 5632]. Hankison argues that the prior acts are "character" evidence with "no other purpose." [DE 176 at 5909].

Because this is a use of force case under 18 U.S.C. § 242, Hankison's intent is "material and automatically at issue." *United States v. Mize*, 498 F. Supp. 3d 978, 983 (S.D. Ohio 2020); *see also Lattner*, 385 F.3d at 957; *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996). The question is whether evidence of Hankison's prior acts are "substantially similar" and "reasonably near in time" to illuminate his intent regarding the charged offenses. *See United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011).

While "there is no requirement that the prior act[s] must be identical in every detail to the charged offense," *United States v. LaVictor*, 848 F.3d 428, 447 (6th Cir. 2017) (cleaned up), the use-of-force precedents offered by the United States follow a tight pattern. For example, in *United States v. Cowden*, a deputy sheriff was charged for repeatedly slamming a detainee into a wall. 882 F.3d 464, 469 (4th Cir. 2018). The Rule 404(b) evidence involved two prior incidents of physically assaulting a suspect at a scene. *Id.* at 470. In *United States v. Boone*, an officer was charged for violently kicking a grounded suspect in the face, then falsifying paperwork about the incident. 828 F.3d 705, 708–09 (8th Cir. 2016). The Rule 404(b) evidence involved a similar incident where he "used more force than necessary to subdue an individual," then "failed to accurately document his use of force." *Id.* at 712. And in *Mize*, a deputy sheriff was charged for shoving a detainee into a cement wall. 498 F. Supp. 3d at 981. The Rule 404(b) evidence involved "three prior incidents" of "excessive . . . force against an inmate." *Id.* at 984.

Hankison is charged with "fir[ing] . . . shots through a window and a sliding glass door, both of which were covered with blinds and curtains." [DE 1 at 2]. As he points out, neither prior

10

incident involved him firing a weapon (or exerting any similar degree of force). [DE 176 at 5906]. Furthermore, while the United States argues that Hankison "disregard[ed] his training" in all three instances, it is not clear that any particular policy, procedure or training violation was common to all three instances. [DE 155 at 5635]. To succeed on its motions for admissibility, the United States would need to further proffer and demonstrate how the force used in the two prior incidents was excessive, if there was a common policy or procedure ignored, and how the prior incidents are substantially similar. At this time, the Court lacks the necessary information to permit a finding as to this second step of the analysis.

iii. *Prejudice and Probative Value*

Third, the Court "must determine whether the 'other acts' evidence is more prejudicial than probative." *Lattner*, 385 F.3d at 955. "Evidence is unfairly prejudicial when it tends to suggest decision on an improper basis." *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016) (cleaned up). "[T]he strength of the evidence establishing the similar act," as addressed at the first step, "is one of the factors the court may consider" at this final step. *Huddleston*, 485 U.S. at 689 n.6. Ultimately, it is Hankison's burden to show that the evidence's risk of unfair prejudice substantially outweighs its probative value. *United States v. Ramer*, 883 F.3d 659, 670 (6th Cir. 2018) (citing Fed. R. Evid. 403); *see also Mize*, 498 F. Supp. 3d at 985. The United States argues that Hankison's prior acts are "highly relevant," "not unfairly prejudicial" and acknowledges that "a limiting instruction requiring that the jury consider the evidence only for permissible purposes" could curtail prejudice if necessary. [DE 155 at 5641]; *e.g. Lattner*, 385 F.3d at 958; *see also Huddleston*, 485 U.S. at 691–92; *accord.* Fed. R. Evid. 105. Hankison simply argues that the evidence would be "unfairly prejudicial." [DE 182 at 5951]. In light of the Court's findings at step two above, the Court lacks sufficient information to make a conclusion as to step three.

\* \* \*

The evidence of Hankison's prior acts could become admissible at trial depending on a variety of factors. However, at this stage, the Court does not have enough information and, the United States' motion [DE 155] will be **DENIED without prejudice**. In order to admit this evidence, the Court would need a proffer of evidence outside the presence of the jury surrounding the two prior incidents to ensure the United States can meet its burden to show, as discussed, that the two prior incidents occurred, are substantially similar to Hankison's charged conduct, and are relevant in that the force used in the two prior incidents was excessive.

### C. United States' Motion to Exclude References to Rifle Casings [DE 156]

Before this matter's first trial, the Court denied a motion by the United States regarding two rifle casings. [DE 73 at 2179–84]. In light of testimony elicited at the first trial, the United States renews its motion. [DE 156]. The United States argues that "evidence . . . presented at the first trial," including Hankison's own testimony, "proved that no rifle was present" at the scene, making the rifle casings irrelevant, misleading and highly prejudicial. [*Id.* at 5646–55]. Further, the United States asserts that references to the .223 rifle casings during prior proceedings "inflamed and misled the jury." [*Id.* at 5650]. Hankison asserts that the casings are relevant because "[a]t the time of the shooting, Defendant perceived that an assault rifle was fired from inside of the apartment," [DE 180 at 5942] and because Defendant, other officers, "as well as a civilian witness present during the execution of the search warrant at issue, have consistently stated that they heard what sounded like, and/or observed what looked like assault rifle fire," [*id.* at 5941].

The Court previously found that that it was improper to exclude the rifle casings as they did carry some probative value, although they "minimally cross[ed] that threshold." [DE 73 at 2181]. The question now is whether Hankison's testimony at trial—admitting that while on the night of the search warrant execution he perceived that an assault rifle was fired from inside of the

12

apartment, but now acknowledges that his perception was a "mistake," that "there was no AR-15 used during this incident," and that the two rifle casings "were not used in this shooting that night"—changes the probative value of the rifle casing. [DE 128 at 5238–39]. It does not.

Whether Hankison admits that his perception was a mistake or not does not alter the testimony of other witnesses. "Evidence is relevant if: it has *any* tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added); *see United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020) ("Courts do not require that each piece of evidence directly prove or disprove an element of the offense."); *United States v. Lang*, 717 F. App'x 523, 530, 538, 539 (6th Cir. 2017) (explaining Rule 401 threshold is a "low" bar). The potential testimony of Sarpee—the man visiting Apartment 8 during the incident who found one of the .223 rifle casings and who stated that the shooting sounded like rifle fire—coupled with the FBI's determination that the two casings were discharged from the same weapon, would give the .223 casings at least some tendency to show that a rifle may have been present at the scene (even if no rifle were fired or collected). Therefore, the casings minimally satisfy Rule 401. *See Old Chief v. United States*, 519 U.S. 172, 179 (1997) (evidence relevant that represents merely "a step on one evidentiary route to the ultimate fact"). A jury can decide what significance to assign the rifle casings and weigh it against the evidence put forth by the United States.

As stated previously, the Court finds that the probative value of the .223 casings is not substantially outweighed by danger of confusing or misleading the jury. Hankison's testimony does not change the weight of that analysis, nor can the United State point to any circumstance from the prior trial to show that the .223 casings "inflamed and misled the jury." Even if the United States is correct that the circumstantial evidence connecting the .223 casings to the incident is thin, that does not make the probative value of the .223 casings substantially outweighed by the

13

possibility of misleading the jury or confusing the issues. *See Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) ("Neither the appellate nor the district court is permitted to consider the weight or sufficiency of the evidence in determining relevancy and '[e]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'") (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)); *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) ("The [Rule 403] test is strongly weighted toward admission."); *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (explaining that Rule 403 is an "extraordinary remedy" and "carries a strong presumption in favor of admissibility") (citations and quotations omitted). The Court is confident that the jury can consider the facts surrounding the discovery of the two rifle casings and weigh the evidence presented by the parties. If anything, Hankison's admission, that he was mistaken in his perception on the night of the execution of the search warrant, should lessen or eliminate any concerns about the jury being misled.

For these reasons, the United States' motion [DE 156] is **DENIED**. But the parties are cautioned not to recklessly mislead the jury on issues regarding the rifle casings or encourage any form of jury nullification on this issue.

### D. United States' Motion to Exclude References to Prior Proceedings [DE 162]

Before this matter's first trial, the Court granted a motion by the United States regarding related civil litigation and settlements. [DE 73 at 2177–78]. Now the United States has filed a similar motion to exclude references to "prior legal proceedings," including this matter's first trial and Hankison's state court prosecution. [DE 162]. Hankison has not filed any response. At the final pretrial conference, he indicated his intentions to comply with applicable law on this issue.

Evidence of related civil proceedings is generally only admissible as impeachment evidence. *E.g. United States v. Lewis*, No. 13-20122, 2015 WL 4771328, at *3 (E.D. Mich. Aug.

13, 2015), *aff'd,* 662 F. App'x 350 (6th Cir. 2016). As before, the United States' motion [DE 162] is **GRANTED**. References to any other proceedings will be permitted only for the purposes of challenging the credibility of witnesses and only if they testify.

### E. Hankison's Motion to Exclude Characterizations of His Use of Force [DE 161]

This motion raises four issues regarding courtroom presentation, testimony and argument over Hankison's use of force. [DE 161]. The United States responded. [DE 174]. Hankison's motion does not identify any troublesome remarks or testimony from this matter's first trial. Per discussion at the final pretrial conference, he submitted a post-conference "reply" citing and discussing some examples. [DE 183].

First, Hankison asserts that any testimony addressing the "reasonableness" or "appropriateness" of his actions—in other words, providing legal conclusions for the jury—would be inappropriate. [DE 161 at 5755]. The United States agrees. [DE 174 at 5888]. "[O]bjective reasonableness is a legal conclusion." *Thomas*, 854 F.3d at 366. The Court will not order the parties to follow agreed points of law where no dispute exists regarding witnesses' testimony. *See Brown v. TG Auto. Sealing Kentucky, LLC*, No. 5:22-CV-00026-GNS-LLK, 2024 WL 3656218, at *3 (W.D. Ky. Aug. 2, 2024) (motions in limine); *cf. Perez v. Ohio Bell Tel. Co.*, 655 F. App'x 404, 411 (6th Cir. 2016) ("obey-the-law" injunctions).

Second, Hankison argues that witnesses who did not "personally observe" his use of force "lack the personal knowledge necessary to provide admissible lay opinion testimony" about it. [DE 161 at 5755–56]. In his reply, Hankison flags the previous testimony of two officers who did not arrive on-scene until after his use of force. [DE 183 at 5953–54]. The United States agrees that such witnesses "may not opine" about whether Hankison's actions complied with LMPD policies, procedures or training. [DE 174 at 5888–89]. However, the United States also argues that "all officer-witnesses may" offer "testimony about training standards, rooted in personal knowledge,"

15

including how such training would apply in "circumstances that are similar to" those of this case. [*Id.* at 5889].

The Court finds nothing problematic with the testimony on these subjects that was admitted at the first trial. Witnesses may testify regarding their personal knowledge of LMPD policies, procedures and training; their personal observations at the scene; or both. *See* Fed. R. Evid. 602. They generally may provide lay opinions that are "rationally based on [their] perception[s]" and "helpful to . . . determining a fact in issue." Fed. R. Evid. 701. The United States contends that one officer, Detective M.C., "witnessed [Hankison]'s shooting and therefore may offer opinions" about whether the shooting "was consistent with deadly force standards." [DE 174 at 5894]. Any remaining dispute on this point can be addressed if and when a foundation is laid for that witnesses' opinion testimony. The Court will not rule on broad categories of evidence where it appears that only one opinion from one witness will be an issue. *See Sperberg*, 519 F.2d at 712.

Third, in one sentence, Hankison asks the Court to exclude "any such evidence" as unfairly prejudicial, confusing and misleading. [DE 161 at 5757]. This Rule 403 argument is too perfunctory to warrant consideration. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Finally, Hankison's motion challenges not only witness testimony, but the United States' "opening and closing arguments" as well. [DE 161 at 5755]. His "reply," which was meant to address specific points of witness testimony, largely recites the United States' opening statement in this matter's first trial. [DE 183 at 5952–53]. As the United States points out, to the extent Hankison's motion reaches comments at trial outside witness testimony, it "offers no . . . legal support" for his position. [DE 174 at 5897]. Accordingly, it warrants no further consideration.

The testimony on these subjects that was admitted at this matter's first trial generally will be permitted again, absent further order of the Court. For the foregoing reasons, Hankison's motion [DE 161] is **DENIED**.

### III. EXPERT WITNESS'S COMPENSATION

At the final pretrial conference, counsel for the United States reported that Hankison has not disclosed Borden's compensation for serving as an expert witness in this case. Counsel for Hankison responded that no such disclosure is required under Federal Rule of Criminal Procedure 16 and suggested that counsel neither sets nor knows Borden's compensation. Rule 16 notwithstanding, the United States is entitled at trial not only to cross-examine Borden about his compensation, but also to receive some evidence of that compensation. *United States v. Fell*, 372 F. Supp. 2d 786, 790 (D. Vt. 2005) ("[C]ourts allow parties to examine an expert witness's compensation in an effort to impeach for bias."); *cf.* Fed. R. Evid. 705 (facts or data underlying expert opinion). In order to avoid unnecessary delay and complications at trial, the Court will expect Hankison, through counsel, to disclose Borden's compensation prior to trial.

### IV. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, IT IS ORDERED as follows:

- The United States' motion to exclude expert witness testimony [DE 154] is **GRANTED**;
- The United States' motion to introduce evidence of prior bad acts [DE 155] is **DENIED without prejudice**;
- The United States' motion to exclude references to the rifle casings [DE 156] is **DENIED**;

17

- The United States' motion to exclude references to prior proceedings [DE 162] is **GRANTED**;

- Hankison's motion to exclude characterizations of his use of force [DE 161] is **DENIED**; and

- Hankison **SHALL**, before trial, disclose to the United States the amount of Borden's compensation for his work in this matter.